United States District Court
Southern District of Texas

**ENTERED**

October 25, 2024

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| GERALD J. DURDEN, | § | |
| TDCJ #01121671 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-23-4543 |
| | § | |
| GERALD DOYLE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Gerald J. Durden is currently incarcerated at the McConnell Unit in the Texas Department of Criminal Justice – Correctional Institutions Division (TDCJ). He has filed a civil-rights complaint under 42 U.S.C. § 1983 and a memorandum in support (Docket Entry Nos. 1, 3). Durden sues Gerald Doyle, the chief of the Conviction Integrity Division at the Harris County District Attorney's Office, in both his official and personal capacity. Durden alleges that Doyle has failed to disclose exculpatory post-conviction DNA test results, in violation of Durden's Fourteenth Amendment due process rights. Durden represents himself and has been granted leave to proceed without prepaying the filing fee.

After screening the pleadings under 28 U.S.C. §§ 1915(e) and 1915A(b), the court concludes that this case must be dismissed. The reasons are set out below.

**I.      Background**

The facts in this section are primarily taken from Durden's complaint and memorandum in support. (Docket Entry Nos. 1, 3). In 2002, Durden was convicted of the aggravated sexual assault of a child and sentenced to serve a 58-year prison term. *See Inmate Info. Search*, Tex. Dep't of Crim. Just., https://inmate.tdcj.texas.gov/InmateSearch/viewDetail.action?sid=05276806 (last

visited Oct. 10, 2024).  At trial, DNA taken from the complainant's underwear was submitted as evidence.  (*See* Docket Entry No. 3-1 at 4).

Durden alleges that in June 2018, he filed a motion for post-conviction DNA testing under Article 64.01 of the Texas Code of Criminal Procedure, asking to retest the complainant's underwear.  (*Id.* at 5).  The convicting court held a hearing on the motion in December 2018.  (*Id.*).  At the hearing, Doyle—who was the State prosecutor—said that the State was willing to retest the DNA samples.  (*Id.* at 6).  Doyle told Durden that if he agreed to let the Harris County Institute of Forensic Science (HCIFS) lab perform the retesting, instead of the Texas Department of Safety's (DPS) crime lab, which had a backlog, the DNA results would be available more quickly.  Doyle stated that he would give Durden a copy of the DNA results and all data related to those results.  (*See id.*).  Durden verbally agreed to Doyle's suggestion.  (*Id.*).  Doyle said that he would work with Durden's lawyer to hammer out the details.  (*Id.*).  The judge did not enter an order for DNA testing under Chapter 64.01 of the Texas Code of Criminal Procedure.  (*Id.*).

After the hearing, the court appointed Abbie Russell as Durden's lawyer.  (*Id.*).  Durden alleges that Russell did not communicate with him.  (*Id.*).  When Durden finally talked to Russell, Durden said that he did not want the HCIFS lab to perform the retesting and instead wanted the DPS lab to do the retesting.  (*Id.* at 6–7).

After 14 months or so, Russell withdrew as Durden's attorney.  (*Id.* at 7).  In February 2020, Durden sent Doyle a letter in which Durden gave his "formal consent" to allow HCIFS to perform the retesting.  (*Id.*).

In July 2020, Rick Oliver was appointed as Durden's new counsel.  (*Id.*).  In October 2020, Oliver told Durden that the HCIFS lab had completed the retesting but it would be several days before the results were known.  (*Id.* at 8).  On October 18, 2020, Oliver sent Durden a copy of a

2

supplemental forensic genetic report.  (*See id.* at 8).   In May 2021, a Dr. Bonnell sent Durden a letter stating that the supplemental forensic genetic report was "grossly inadequate" because it did not contain the results of the analysis, but rather a summary of the results.  (*Id.*).  Although not mentioned by Durden in his pleadings, in February 2023 he filed a petition for a writ of mandamus with the Fourteenth District Court of Appeals, asking the appeals court to compel the presiding judge of the 248th District Court of Harris County to order the State to provide Durden with copies of the DNA test results and data of the testing performed by HCIFS.  *See In re Durden*, No. 14-23-00122-CR, 2023 WL 5368339, at *1 (Tex. App.—Houston [14th Dist.] Aug. 22, 2023).  The decision denying Durden's request for mandamus relief is discussed at length later in this opinion.

In this federal lawsuit, Durden claims that Doyle committed fraudulent inducement and has failed to disclose the exculpatory post-conviction DNA test results, in violation of Durden's due process rights under the Fourteenth Amendment.  (Docket Entry No. 3-1 at 10).  Durden asserts that Doyle "deprived [him] of his right to post conviction DNA testing under Ch[apter] 64 of the Texas Code of Criminal Procedure by which [Durden] was entitled to the DNA test results and data related to the DNA test results . . . ." (*Id.*).  Durden alleges that Doyle never intended to give him a copy of the "actual DNA re-test results and data related to the DNA test results," and instead used the December 2018 court hearing as a "disguise" to get Durden to agree to allow HCIFS to perform the retesting, instead of DPS.  (*See id.* at 8, 10).  Durden seeks an injunction ordering Doyle to provide him with the 2020 HCIFS DNA test results and data.  (Docket Entry No. 1 at 4).

## II.     The Standard of Review

Because Durden is an inmate who has been granted leave to proceed *in forma pauperis*, the Prison Litigation Reform Act requires the court to scrutinize the pleadings.  The court must dismiss the case at any time, in whole or in part, if it determines that the action is frivolous,

malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  In deciding whether the plaintiff's claim must be dismissed, the court examines whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Under this standard, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

In reviewing the pleadings, the court is mindful that Durden represents himself.  Courts construe self-represented litigants' pleadings under a less stringent standard of review.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Even under this lenient standard, a self-represented plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 (cleaned up).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  No matter how well-pleaded the factual allegations may be, they must reveal that the plaintiff is entitled to relief under a valid legal theory.  *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

4

III.    **Discussion**

Durden alleges that Doyle, a State employee, violated his constitutional rights under the Fourteenth Amendment's Due Process Clause. "Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (*quoting Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that (1) he has been deprived of a right secured by the Constitution or of federal law, and (2) the violation was committed by someone acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005).

As recounted in Section I, although Durden has included factual allegations related to his claim, a review of the decision from the Fourteenth Court of Appeals in the Article 64.01 proceeding sheds more light on the relevant factual and legal background.[1]  The opinion from the court of appeals is reproduced below:

**MEMORANDUM OPINION**

PER CURIAM

On February 23, 2023, relator Gerald J. Durden filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221; *see also* Tex. R. App. P. 52. In the petition, relator asks this court to compel the Honorable Hilary Unger, presiding judge of the 248th District Court of Harris County, to order the State to

---

[1] A court may take judicial notice of public court records. *See Burns v. Mayes*, 369 F. App'x 526, 527 n.4 (5th Cir. 2010) (per curiam).

5

provide him copies of DNA test results and the data of the testing performed by the Harris County Institute of Forensic Science.

## BACKGROUND

A grand jury indicted relator for the aggravated sexual assault of a child— his nine-year-old daughter.  The child told another adult about the assault the evening after the assault occurred.  *Durden v. State*, No. 14-02-00818-CR, 2003 WL 22143293, *1 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (mem. op., not designated for publication).  That person called the police and relator was arrested.  *Id.*  Relator was convicted of aggravated sexual assault of a child and sentenced to 58 years' incarceration, and this court affirmed relator's conviction. *Id.*  The Texas Court of Criminal Appeals refused relator's petition for discretionary review.

On June 11, 2018, relator filed a motion for DNA testing.  The trial court appointed counsel for relator; however, counsel was allowed to withdraw.  On December 13, 2018, the trial court held a hearing.  Harris County Assistant Attorney Gerald Doyle attended in person and relator attended by telephone.  At the hearing, the trial court confirmed with relator that he wanted new counsel, after his previous counsel had withdrawn.  Doyle advised the trial court and relator that he had contacted the Harris County Institute of Forensic Science ("HCIFS"), which had performed the DNA testing in 2002.  According to Doyle, the lab was willing to retest with newer available testing techniques.  Relator confirmed that was what he wanted.  Doyle explained that if relator proceeded under Chapter 64, the testing would be done by the Texas Department of Safety's ("DPS") crime lab.  However, if HCIFS performed the testing, it would take less time than DPS because HCIFS was already familiar with the analysis.

On December 19, 2018, the trial court appointed relator counsel, Abbie Russell, to represent him.  On April 30, 2020, Russell filed a motion to withdraw as attorney of record because relator had contacted the Texas Bar on three occasions, with the last contact resulting in the filing of a grievance, against which Russell had to defend herself.  The trial court granted Russell's motion on May 5, 2020.

Russell responded to relator's third complaint against her.  In her response, Russell explained that, although Durden asserted to Russell that he had given his formal consent to have the evidence retest by HCIFS, part of the reason she was

appointed to represent him was to help him understand Doyle's proposal. According to Russell, Doyle would not initiate the retesting until relator had consulted with relator's new counsel and counsel had advised Doyle of Durden's formal consent. It took 14 months for Russell to convince Durden that no retesting had been performed, at which time she received relator's formal consent.

Russell further explained that to be successful on a Chapter 64 motion, relator would have to show that the DNA testing was not done in his case, or that DNA testing was done on the evidence as the time of his trial, and that testing was not technologically capable of providing probative results. If relator were able to meet those requirements, he would be entitled to relief. Under either scenario, Chapter 64 requires that the evidence be sent to DPS for retesting.

Russell was concerned that relator would not be able to establish the threshold of eligibility for retesting. DNA testing had been done in relator's case prior to trial by two separate labs, with each lab providing a report containing probative results that were not favorable to relator. Russell learned that more advanced technology was available than had been at the time of relator's trial and HCIFS had the same technology as DPS, but HCIFS had a shorter turn-around time for retesting.

Russell further learned that, on December 13, 2018, five days before she was appointed to represent relator, the trial court had held a hearing. Russell learned from Doyle that while Chapter 64 required testing be done by DPS, Doyle was willing to agree to retesting without relator having to establish the threshold eligibility for retesting. However, in exchange for this agreement, the testing would be done by HCIFS. Doyle believed relator was generally agreeable to his proposal. The trial court and Doyle agreed that it would be prudent that relator have counsel to consult with before giving formal consent. Doyle would not initiate retesting until he received relator's formal consent through Russell. Doyle advised Russell that if HCIFS performed the retesting rather than DPS, relator's Chapter 64 motion would be moot once the lab report was received.

Relator appears to have had another attorney, Rick Oliver, subsequently appointed to represent him. On October 12, 2020, Oliver informed relator by letter that the analyst at the lab advised that the testing had been completed and the report would be finished and submitted for technical review. Oliver stated that he would forward the lab report to relator as soon as he had received it.

On May 13, 2021, relator receive a letter from Harry J. Bonnell, M.D., stating the supplemental forensic genetics report was "grossly inadequate." Dr. Bonnell explained that pages 2 and 3 did not contain the results of the analysis but a summary of the results, i.e., an interpretation.

On June 10, 2021, relator wrote the trial court that the supplemental forensic genetics report from HCIFS was "grossly inadequate" because it did not contain the results of the DNA testing and also included a copy of the letter from Dr. Bonnell. Relator stated that he was supposed to receive copies of the results and the data of the DNA testing and asked the trial court to compel the State to serve him with copies of those items pursuant to Article 64.03(d)(3) of the Texas Code of Criminal Procedure. Relator renewed his request to the trial court on August 10, 2021, January 4, 2022, March 21, 2022, and September 6, 2022. Relator also wrote the trial court coordinator on August 10, 2021, and March 21, 2022, regarding the status of his requests made to the trial court.

On February 23, 2023, relator filed his petition for writ of mandamus in this court. Relator asks this court to compel the trial court to order the State to provide relator with copies of the DNA test results and the data related to the testing. On this court's request, the State filed a response to relator's petition on April 17, 2023.

On April 20, 2023, relator filed a motion for leave to file new evidence in support of his petition, which we granted. The new evidence included an April 5, 2023 letter from Rick Oliver, who had previously represented relator. Oliver stated, after reviewing relator's letter to him dated February 23, 2023, he believed that relator's subsequent writs were discovery requests for un-redacted copies of the DNA reports that were used in his trial. Oliver stated that he also confirmed this with Dr. Bonnell. Oliver explained to the trial court what relator was requesting and asked to be reappointed to the matter so that he could contact the lab and obtain the unredacted reports. The trial court approved Oliver's request. Oliver then stated that he called the lab analyst and she found the un-redacted reports and sent them to Oliver. Oliver then called Dr. Bonnell to confirm that these were the lab reports relator was seeking. Oliver stated that he was enclosing copies of the two DNA reports received from the lab to relator.

Relator states that the unredacted lab reports are the results and data from the March 3, 2002 DNA test, not the result and data from the October 2020 subsequent retesting. To date, relator has not received the October 2020 DNA test results and data.

## ANALYSIS

To be entitled to mandamus relief, a relator must show (1) that the relator has no adequate remedy at law for obtaining the relief the relator seeks; and (2) what the relator seeks to compel involves a ministerial act rather than a discretionary act. *In re Powell*, 516 S.W.3d 488, 494–95 (Tex. Crim. App. 2017) (orig. proceeding). The relator can satisfy the requirement of a ministerial-act if he can show a clear right to the relief sought. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (orig. proceeding).

Relator contends that the State was required to provide him copies of the DNA results and the testing data under article 64.03(d)(3). *See* Tex. Code Crim. Proc. art. 64.03(d)(3) (providing that "on completion of the DNA testing, the results of the testing and all data related to the testing required for an evaluation of the test results be immediately filed with the court and copies of the results and data be served on the convicted person and the attorney representing the state").

A convicting court may order forensic DNA testing only if the statutory preconditions of Chapter 64 are met. *Weems v. State*, 550 S.W.3d 776, 780 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Here, the State agreed to have the evidence retested without relator's having met the requirements for the trial court to order testing under Chapter 64. Pursuant to article 64.03(d)(3), the convicting court must issue an order for forensic testing to either DPS or another laboratory under contract with DPS. Tex. Code Crim. Proc. art. 64.03(d)(3). Section 64.03(d)(3) mandates that, if the court orders that the testing be conducted by DPS or a laboratory under contract with DPS, the court shall direct that, "on completion of the DNA testing, the results of the testing and all data related to the testing required for an evaluation of the test results be immediately filed with the court and copies of the results and data be served on the convicted person and the attorney representing the state." *Id.*

At the December 13, 2018 hearing, Doyle explained that to relator that if he proceeded under Chapter 64, DPS would do the testing. Doyle recommended that HCIFS do the testing because it was already familiar with the previous analysis. The trial court stated that it would appoint an attorney, who would stay in touch with Doyle with respect to the subsequent testing. Relator expressed an interest in having HCIFS conduct the testing.

9

Doyle recommended to relator's attorney, Abbie Russell, that HCIFS perform the retesting rather than DPS under Chapter 64. Doyle explained that if HCIFS retested the evidence, relator's Chapter 64 motion would be moot. Russell explained to relator that the trial court had appointed her to assist relator in understanding the terms of Doyle's proposal for retesting. After consulting with Russell, relator agreed to have HCIFS retest the evidence rather than have the evidence retested by DPS.

Because the retesting of the evidence by HCIFS was by agreement between the State and relator, the trial court never issued an order for retesting pursuant to Chapter 64. In the absence of an order by the trial court for post-conviction DNA testing, relator has not shown that he has a clear right to the relief he has requested.

**CONCLUSION**

Relator has not established that he is entitled to mandamus relief. Accordingly, we deny relator's petition for writ of mandamus.

*In re Durden*, No. 14-23-00122-CR, 2023 WL 5368339, at *1–4 (Tex. App.—Houston [14th Dist.] Aug. 22, 2023).

An inmate does not have a freestanding federal constitutional right to obtain post-conviction DNA testing. *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009); *see also Roddy v. Babin*, 795 F. App'x 299, 300 (5th Cir. 2020) (per curiam) ("[T]he Supreme Court [has] determined that there is no freestanding federal substantive due process right to post-conviction DNA testing . . . .") (citing *Osborne*, 557 U.S. at 72–73). Such a right, however, may be created by state law. *Jackson v. Randolph*, 772 F. App'x 195, 196 (5th Cir. 2019) (per curiam). "In Texas, a prisoner has a statutory right to move for post-conviction forensic DNA testing of evidence containing biological material pursuant to Chapter 64 of the Texas Code of Criminal Procedure." *Sanchez v. Lumpkin*, No. EP-21-CV-308-KC, 2021 WL 6127512, at *2–3 (W.D. Tex. Dec. 28, 2021) (citing Tex. Code Crim. P. Ann. art. 64.01 and *Elam v. Lykos*, 470 F.

App'x 275, 276 (5th Cir. 2012)); *see also Pruett v. Choate*, 711 F. App'x 203, 206 (5th Cir. 2017)

("Although defendants do not have a federal constitutional right to postconviction DNA testing, if

a state creates such a right—as Texas has done in Chapter 64—then the procedures to enforce that

right must satisfy due process . . . .") (internal citation omitted).

Chapter 64 of the Texas Code of Criminal Procedure "requires the judge of the convicting

court to order DNA testing when requested by a convicted person" if that judge finds that all of

the following requirements are met:

(1) evidence exists that by its nature permits DNA testing;

(2) the evidence was either:
    (a) justifiably not previously subjected to DNA testing [because DNA testing i) was not available, or ii) was incapable of providing probative results, or iii) did not occur "through no fault of the convicted person, for reasons that are of such a nature that the interests of justice require DNA testing"]; or
    (b) subjected to previous DNA testing by techniques now superseded by more accurate techniques;

(3) that evidence is in a condition making DNA testing possible;

(4) the chain of custody of the evidence is sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(5) identity was or is an issue in the underlying criminal case;

(6) the convicted person has established by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(7) the convicted person has established by a preponderance of the evidence that the request for DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

*Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011) (citations omitted).  If the judge

finds that these elements are met, then the convicting court must order testing.  *Id.* at 890.

If the request for testing is denied, an inmate cannot "mak[e] a direct challenge in federal court to that state-court denial[; instead], he may make a facial challenge to the statutes, rules, and interpretations on which the denial was based." *Gutierrez v. Saenz*, 93 F.4th 267, 271 (5th Cir. 2024) (citing *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013)), *cert. granted,* No. 23-7809, 2024 WL 4394129 (U.S. Oct. 4, 2024).

Durden's claim fails for at least two reasons.  First, Durden does *not* bring a constitutional challenge to Chapter 64 of the Texas Code of Criminal Procedure.  Instead, he alleges that Doyle's failure to disclose the 2020 HCIFS DNA test results violates his constitutional rights.  (*See* Docket Entry No. 1 at 3–4).  Durden does not assert a due process challenge to the Texas law.  As a result, he does not state a valid claim for relief.  *See, e.g.*, *Vela v. Ogg*, No. CV H-22-0803, 2022 WL 2785914, at *2 (S.D. Tex. June 8, 2022) (dismissing a civil rights case brought by an inmate requesting that the district attorney undertake postconviction DNA testing because the inmate did not challenge the procedural due process or the adequacy of the state law procedures), *appeal dismissed,* No. 22-20356, 2022 WL 18232558 (5th Cir. Aug. 25, 2022).

Second, the Fourteenth District Court of Appeals opinion and Durden's own pleadings make clear that Durden was not denied relief under Chapter 64 of the Texas Code of Criminal Procedure.  The trial court never entered an order for post-conviction DNA testing.  Instead, Doyle and Durden agreed that the retesting of the DNA would be performed by HCIFS.  The retesting of the DNA by HCIFS mooted Durden's Chapter 64 motion.  *See In re Durden*, 2023 WL 5368339, at *2–4.

Because Durden does not allege that Chapter 64.01 failed to provide procedural due process and because Durden's Chapter 64 motion became moot by the agreement that the retesting would be performed by HCIFS, he has failed to state a claim for which relief may be granted.  His

Fourteenth Amendment due process claim is dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

To the extent that Durden brings a state-law claim based on fraudulent inducement, this claim is dismissed without prejudice. A federal district court has supplemental jurisdiction over state-law claims that are so related to the federal claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over state law claims after dismissing the federal claims. *See St. Germain v. Howard*, 556 F.3d 261, 263–64 (5th Cir. 2009*); see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Generally, when all federal claims have been dismissed at an early stage, a district court should dismiss any pendent state law claims without prejudice. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.") (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

Durden's federal claims have been dismissed. The court declines to exercise supplemental jurisdiction over any state law claims. Durden's state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

**IV.    Conclusion**

For the reasons stated above, the court orders that the federal constitutional claims contained in the civil action filed by Gerald Durden are dismissed with prejudice under 28 U.S.C.

§§ 1915(e)(2)(B)(i) and 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.  The state-law claims are dismissed without prejudice.

SIGNED on October 25, 2024, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

14